## METROPOLITAN LIFE INSURANCE COMPANY. *v.* FRANKEL.

[No. 8,078. Filed December 9, 1913. Rehearing denied May 26, 1914. Transfer denied February 18, 1915.]

1. INSURANCE.—*Action on Life Policy.—Answer.—Sufficiency of Reply.*—In an action on an insurance policy, where a paragraph of answer proceeded on the theory that plaintiff intimidated and caused his wife to make false representations in her application for the insurance, and that after the policy was issued he intentionally brought about his wife's death, a paragraph of reply setting up matters only in avoidance of the charge as to the false representations was insufficient, and, since the charge of having intentionally caused the death could not have been disproved under the general denial, the overruling of a demurrer to such reply was reversible error. p. 121.

2. INSURANCE.—*Life Insurance.—Proof of Death.—Time for Making Proof.*—In the absence of a policy provision fixing the time within which proofs of death shall be made, the same must be made within a reasonable time. p. 122.

3. INSURANCE.—*Life Insurance.—Proof of Death.—Time for Making.—"Reasonable Time".*—As to what is a "reasonable time" within which to furnish proofs of death in order to recover on an insurance policy, depends upon the circumstances of each case, and becomes a question of law for the court where the facts are undisputed, but is otherwise a question for the jury; hence, where delay in making proof was shown, and it appears that there was an investigation both by the coroner and the grand jury as to the cause of insured's death, and that within a few days after the death, the beneficiary employed a lawyer to attend to matters, etc., the question of whether there had been unreasonable delay was properly submitted to the jury. pp. 122, 123.

4. INSURANCE.—*Proof of Loss.—Waiver.*—Failure to object to proof of loss after an unreasonable time has elapsed for the making of such proof, does not in all cases constitute a waiver. p. 123.

From Superior Court of Marion County (79,158) ; *Charles J. Orbison,* Judge.

Action by Meyer Frankel against the Metropolitan Life Insurance Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*W. H. H. Miller, C. C. Shirley, S. D. Miller* and *W. H. Thompson,* for appellant.

*Guilford A. Deitch, Henry Spaan* and *M. S. Meyberg,* for appellee.

SHEA, J.—Action by appellee, Meyer Frankel, against appellant to recover upon two life insurance policies issued by the latter upon the life of Memi Frankel, his wife, in which he was named as beneficiary. The first paragraph of complaint alleges substantially that appellant, a foreign corporation, on July 12, 1907, was engaged in the life insurance business in the State of Indiana. On said day, in consideration of a semiannual premium of $5.25 then paid to it, and to be paid throughout the continuance of the contract, appellant insured Memi Frankel, the wife of appellee, for the term of her natural life in the sum of $500, and by the terms of the contract agreed to pay appellee as beneficiary said sum upon her death; that insured died August 2, 1908, in the city of Indianapolis, and appellee caused full proofs of death to be furnished appellant on November —, 1908. At the time of insured's death all premiums due on the policy had been paid, and the contract was in full force and effect; that appellant has not paid the amount stipulated in the policy, nor any part of it, and refuses to do so, denying all liability on said policy; that both insured and appellee have in all things conformed to the terms of the contract and have on their part carried out all the requirements thereof; that there has been unreasonable delay in the payment of the policy, wherefore judgment is asked for the amount of same, and all other proper relief.

The second paragraph contains substantially the same allegations as the first except that the policy sued on was issued June 6, 1908, in consideration of an annual premium of $5.89 payable quarterly for a term of twenty years, and by the terms thereof appellant agreed to pay appellee as the beneficiary named the sum of $500 in the event insured should die before the expiration of said term. The policies

are made a part of the respective paragraphs of complaint by exhibit. Various paragraphs of answer and reply were filed by appellant and appellee. A trial of the issues resulted in a judgment in favor of appellee for $1,145.33.

The only question raised on appeal with reference to the rulings of the court on demurrers to the paragraphs of answer and reply, is the overruling of appellant's demurrer to the second and third paragraphs of appellee's reply, addressed respectively to the eleventh and twelfth paragraphs of appellant's amended answer to the complaint. The other errors relied on for a reversal are the overruling of appellant's motion for a new trial, and the overruling of its motion to correct and modify the judgment.

The material averments of the eleventh paragraph of appellant's answer are as follows: Appellant admits that Memi Frankel died on or about August 2, 1908, and that on July 12, 1907, it issued a policy of insurance upon her life for $500 as set out in the first paragraph of complaint; that in order to induce appellant to enter into this contract, appellee at the time being the husband of and having dominion and control over insured, compelled her, by intimidation and otherwise to make and sign a written application (a copy of which is made a part of this paragraph of answer by exhibit) for said insurance policy, containing among others the following statements:

"And it is further declared and agreed that the foregoing statements and answers and also the statements and answers on the next page hereof in answer to the medical examiner are correct and wholly true; that they shall form the basis of the contract of insurance, if one be issued, and that if they are not thus correct and wholly true the policy shall be null and void. * * * It is hereby declared and agreed by the undersigned that the answers contained in the foregoing are true and correctly recorded, and that together with those named in parts A and B shall become part of the contract of insurance with the Metropolitan Life Insurance Company."

In said application Memi Frankel represented to appellant that she had never had any disease of the brain or insanity; that she was at the time of making the application in sound health; had no physical or mental infirmity of any kind; had not been·under a doctor's care within two years, except at the city hospital for a cold about three months before; had never been under treatment in any dispensary, hospital or asylum, nor had been an inmate of any almshouse or other institution except the city hospital, and had never been seriously ill; that all these statements and representations made by her were material, and were not correct and wholly true, but false and untrue, and by her known to. be so when made; that they were made at appellee's instigation, for the purpose of inducing, cheating and misleading appellant into issuing said policy. Appellant believing said representations to be true and correct, and relying thereon, issued the policy, which it would not have done had it known they were otherwise. Said representations were false and untrue in this—that Memi Frankel, under·the name of Mamie Klankar, was, in September, 1906, declared a person of unsound mind by the duly constituted authorities of Center Township, Marion County, and on October 3, 1906, was committed to the Central Hospital for Insane and there received as a person of unsound mind. The proceedings for her commitment under the false name were instituted by appellee, and she remained a patient of the hospital until some time in April, 1907, when she was temporarily released on parole. While so on parole, she applied for insurance, and the policy sued on in the first paragraph of complaint was issued to her. Subsequently, in August, 1907, the parole was revoked, and she was retaken to the insane hospital where she remained as a patient until October 18, 1907, at which time she was released as improved in condition upon the representation that she would be removed to Europe; that while at the insane hospital Memi Frankel was suffering from insanity, and when the policy was delivered to her,

she was not in sound health, but suffering from a mental disease, all of which was known to appellee; that when the application for insurance was made, decedent professed not to be able to understand the English language, and appellee acted as interpreter and professed to translate the questions propounded to her and in turn translated her answers to the questioner, which the latter wrote in the application, and which were false and fraudulent, and so known to be by appellee, but of which facts appellant had no knowledge until long after decedent's death in August, 1908. No part of the premium of $10.50 paid to appellant was paid by decedent, but all of it was paid by appellee with the purpose and intention and as a part of his scheme of cheating and misleading appellant into making and continuing the contract of insurance. Appellant further avers that about the time the policy was issued, appellee had fraudulently procured and was negotiating for the fraudulent procurement of numerous other policies of insurance on the life of decedent in other companies, and procured the contract sued on in pursuance of a general premeditated scheme to cheat and defraud appellant and such other companies by obtaining as much insurance as possible on the life of decedent, and then taking her life or causing her to take her own life, thus maturing the insurance and enabling him to collect the money thereon; that pursuant to said scheme appellee by his intentional act either directly or indirectly brought about the death of Memi Frankel; that at the time of decedent's death appellee had procured to be issued upon her life policies of insurance aggregating $11,000 and by reason of the premises and appellee's wrongful acts, he is not entitled to recover on said policy.

The twelfth paragraph sets up the same facts except that it answers the second paragraph of complaint.

The second paragraph of appellee's reply, addressed to the eleventh paragraph of appellant's answer avers, in substance, that Memi Frankel, prior to the time she made appli-

cation for the policy sued on, stated to appellant's agent who solicited her for insurance, that she had no diseases of the brain, serious illness or insanity, but that she had received treatment at the Central Hospital for Insane at Indianapolis, Indiana, from October 3, 1906, to about April 14, 1907, and again from about the middle of August, 1907, until the middle of October, 1907, for mental aberration; that decedent made a full and truthful statement of this fact to appellant's agent who took her application, inform-· ing him that prior to the time she received treatment there, her condition of mind had not at all times been clear and lucid, but on several occasions she had had temporary spells of mental derangement of short duration, and it was for this trouble she had been treated in the hospital. During the two occasions she received treatment at the hospital her periods of mental derangement were not continued and persistent, but temporary and of short duration, and not of an acute and violent nature; that practically during all the time she was receiving treatment she was rational and possessed of all her mental faculties and powers of reasoning. Upon being informed of these facts, and upon the further information that decedent had been released from the hospital, said agent stated to her and appellee that the derangement for which she had been treated was not a "disease of the brain" nor "insanity" nor a "serious illness" within the meaning of the terms of the application, whereupon decedent and appellee, relying upon the agent's construction of these terms, stated to appellant's medical examiner upon her medical examination that she had never had these ailments. Appellee says that appellant by reason of the knowledge of its soliciting agent and by reason of his construction of the terms used in the application, should be estopped to set up the statements of decedent concerning her condition of health and mind and treatment received in hospitals or asylums in avoidance of the policy, and demands judgment as prayed in the complaint.

The third paragraph of appellee's reply sets up the same facts as the second except that it is addressed to the twelfth paragraph of appellant's amended answer to the complaint.

Complaint is made that the assignment of errors is not sufficiently set out. While the statement made by appellant in its brief is not altogether perfect, it is a substantial compliance with the rules. It is earnestly insisted that the paragraphs of reply are fatally defective because they do not state facts which avoid the averments of the paragraph of answer to which they are addressed; that in fact they only partially meet the averments thereof. The theory of each paragraph of answer, it is insisted by appellant, is that appellee contrived in the first instance to secure a large amount of insurance on his wife's life by various fraudulent misrepresentations which are set out, and after having procured said insurance, as the consummation of such plans, he caused her death either directly or indirectly.

It is insisted on behalf of appellee that no error was committed in overruling the demurrers to the paragraphs of reply because all the material allegations thereof could be proved under the general denial filed.

If the theory of appellant be the correct one, namely, that said paragraphs of appellee's reply set up matters in avoidance of the answer of fraudulent misrepresentation only, and wholly fail to avoid the other averments of the answer charging appellee with having caused his wife's death, the demurrers should have been sustained. A careful reading of the paragraphs of answer convinces the court that the theory contended for by appellant is the correct one. The averments charging appellee with causing his wife's death could not have been disproved under the general denial, therefore error was committed in overruling the demurrers to the third and fourth paragraphs of reply. A reply which fails to respond to the entire answer to which it is addressed, is insufficient, and the overruling of a demurrer thereto is reversible error. *Collier* v.

*Cunningham* (1891), 2 Ind. App. 254, 257, 28 N. E. 341; *Gerard* v. *Jones* (1881), 78 Ind. 378, 382; *Silvers* v. *Canary* (1887), 109 Ind. 267, 268, 9 N. E. 904.

Under its motion for a new trial appellant assigns that the verdict of the jury was contrary to law and was not sustained by sufficient evidence. It is insisted that there was such a failure upon the part of appellee to give notice of his wife's death as to prevent a recovery in this case.

2. It is the settled law that where the policy contains no specific time within which the notice must be given, or contains language such as the one here being construed, that "due proof of death" must be given, such notice must be given within a reasonable time. *Pickel* v. *Phoenix Ins. Co.* (1889), 119 Ind. 291, 21 N. E. 898; *Insurance Co. of North America* v. *Brim* (1887), 111 Ind. 281, 12 N. E. 315; *Germania Fire Ins. Co.* v. *Deckard* (1891), 3 Ind. App. 361, 364, 28 N. E. 868; *Phoenix Ins. Co.* v. *Rogers* (1894), 11 Ind. App. 72, 77, 38 N. E. 865; *Germania Fire Ins. Co.* v. *Columbia, etc., Tile Co.* (1894), 11 Ind. App. 385, 39 N. E. 304; *Fidelity & Casualty Co.* v. *Sanders* (1904), 32 Ind. App. 448, 451, 70 N. E. 167. As to what is a reasonable time depends upon the circumstances in each particular case.

3. If, however, there is a delay of considerable time unexplained, and the facts are undisputed, it becomes a question of law for the court whether notice was given within a reasonable time. *Pickel* v. *Phoenix Ins. Co., supra; Insurance Co. of North America* v. *Brim, supra; Baker* v. *German Fire Ins. Co.* (1890), 124 Ind. 490, 24 N. E. 1041; *London, etc., Accident Co.* v. *Siwy* (1905), 35 Ind. App. 340, 66 N. E. 481. In the case of *Pickel* v. *Phoenix Ins. Co., supra*, 300, the court said: "Where the facts constituting diligence are in dispute, what is a reasonable time is a question for the jury, under proper instructions of the court, but where the facts are not in dispute, what constitutes a reasonable time is a question of law for

the court." In the case at bar it is shown that a lawyer was employed within a few days after the death of Memi Frankel; there was an investigation by the coroner. and also by the grand jury.

In 2 Bacon, Ben. Soc. and Life Ins. (3d ed.) §405 this language is found: "What is a reasonable time depends upon the circumstances of each case and is usually a question of fact for the jury, or a mixed question of law and fact. If there is no dispute as to the facts the question is one of law for the court. Thus, notice within five days was held to be in time, and, under peculiar circumstances, two months has been held not an unreasonable delay, nor thirty days, nor eleven weeks, nor four months, nor twenty-four days, nor a month. But under different circumstances eleven days has been held unreasonable delay, and eighteen days, and a month, and seven months, notwithstanding the company, from other sources, had notice of the loss. Six days' delay was held unreasonable where the agent lived in the same town and there was no extenuating circumstances."

It is also held that a failure to object to the proof of loss after an unreasonable time has elapsed in making such proof, does not in all cases constitute a waiver. *Aetna Life Ins. Co.* v. *Fitzgerald* (1905), 165 Ind. 317, 324, 75 N. E. 262, 112 Am. St. 232, 1 L. R. A. (N. S.) 422, 6 Ann. Cas. 551, and authorities cited; *Fidelity & Casualty Co.* v. *Sanders, supra;* 2 May, Insurance (4th ed.) §§464, 465. In view of the circumstances under which the policies in this case were issued, the circumstances surrounding the death of appellee's decedent, and the subsequent events, including an investigation by the coroner and an investigation by the grand jury, the question as to whether appellee was sufficiently prompt in making proof of death, in the opinion of the majority of the court, was rightly submitted to the jury.

For the error committed in overruling the demurrers to the third and fourth paragraphs of reply the judgment is reversed. Other questions raised need not be discussed, in view of the conclusion reached by the court.

Judgment reversed, with instructions to sustain the demurrers to the third and fourth paragraphs of reply.

NOTE.—Reported in 103 N. E. 501. As to proofs of death, see 137 Am. St. 718. As to when delay in giving notice or making proof of death under policy of life insurance is excusable, see 41 L. R. A. (N. S.) 285. See, also, under (1) 25 Cyc. 922; (2) 25 Cyc. 1913 Anno. 884-new; (3) 25 Cyc. 947; (4) 25 Cyc. 885.