METROPOLITAN LIFE INSURANCE COMPANY *v.* JOHNSON.

[No. 27,004. Filed February 7, 1938. Rehearing denied April 27, 1938.]

*Meyer, Fine & Bamberger,* for appellant.

*Embree & Baltzell* and *John H. Jennings,* for appellee.

HUGHES, J.—The appellee brought this action against appellant to recover the sum of one thousand ($1,000) dollars on a certificate of insurance issued to the appellee, in the principal sum of five hundred ($500) dollars, in accordance with and subject to the terms and conditions of a certain group insurance policy issued by the appellant to the West Kentucky Coal Company on its employees, including appellee.

It is alleged in the second amended complaint of appellee that the West Kentucky Coal Company on November 1, 1920, was engaged in the mining of coal in the commonwealth of Kentucky; that on said day the appellant executed and delivered to said company a group one-year renewal term policy of insurance; that said group policy of insurance insured the lives of employees of said company actually working on the effective date of said policy, and by its terms the appellant promised and agreed to insure the lives of such employees then absent, after return to work in good health, and new employees, after such new employees had completed an aggregate period of service of three months; that by such policy of insurance the defendant also insured and agreed to insure each of such employees then actually working, and each of such employees then absent, after return to work in good health, and each of such new employees, after they had completed an aggregate period of service of three months, against loss by becoming wholly and permanently disabled by accidental injury

or disease, before attaining the age of sixty years, so that he is and will be permanently, continuously, and wholly prevented from performing any work for compensation or profit; that said group insurance was in full force and effect at the time of the employment of the plaintiff by said coal company and until after the time of the commencement of the total and permanent disability of the appellee.

It is further alleged that after November 1, 1920, and while said insurance was in full force and effect, but the particular date the plaintiff can not state, he became an employee of said company and thereafter completed an aggregate period of service of three months as such employee, and that he thereupon became and was insured under said group policy of insurance, No. 1188 G; that afterwards the appellant executed and delivered to the appellee its certificate of insurance, evidencing his insurance under the terms of said group policy of insurance No. 1188 G; that by the terms of said insurance policy and said certificate of insurance the appellant promised and agreed to pay the appellee, upon due proof of his total and permanent disability, as defined therein, a certain sum of insurance as set out and provided in the policy, amounting to one thousand ($1,000) dollars; that on September 28, 1930, while at work in said mine he received an injury and by reason thereof became wholly and permanently disabled before attaining the age of 60 years. It is further alleged that all premiums had been paid on said policy of insurance; that the appellee notified appellant of his total permanent disability and made due proof of his claim and that he is entitled to recover one thousand ($1,000) dollars under the terms of said policy.

The cause was tried by jury and judgment for eight hundred ($800) dollars was returned. A motion for a new trial was filed and overruled.

The error assigned for reversal is that the court erred in overruling the motion for a new trial. Several reasons are assigned in the motion for a new trial, and among them are: (1) The verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law. We think it is only necessary to pass upon these two assignments to reach a proper conclusion in this case.

The evidence of the appellee, Albert S. Johnson, shows that he went to work for the West Kentucky Coal Company, October 3, 1926, and worked for it until he was injured October 28, 1930.

It is the contention of appellant that the verdict is not sustained by sufficient evidence and is contrary to law because of the failure of the appellee to furnish proof of his alleged total and permanent disability within a reasonable length of time from the date of the commencement of his said alleged disability.

The group policy of insurance sued on provides:

"On receipt by the company at its Home Office of due proof that an Employee insured hereunder has become wholly and permanently disabled by accidental injury or disease, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, the company will waive the payment of each premium applicable to the insurance on the life of such disabled employee that may become payable thereafter under this policy during such disability, and in addition to such waiver, will pay to such employee during such disability, in full settlement of all obligations hereunder pertaining to such employee and in lieu of the payment of insurance as herein provided, such monthly or yearly instalments as may be selected by such employee by written notice. . . ."

No time limit is fixed in the insurance policy within which proof of disability should be furnished the appellant.

We think it fairly appears from the evidence that the appellee met with an accident on October 28, 1930, which caused his alleged total disability. The undisputed evidence shows that no formal written notice of disability was given the appellant until December 4, 1933, which was more than three years after the date of the commencement of appellee's alleged disability. It is the theory of appellee that notice of his total permanent disability was given to his employer, its lawyers and to a Mr. O. H. Wilcox, who the appellee claims was an agent of appellant, within a few hours after the accident. We can not understand how a report of total disability could have been given any of these parties within a few hours after the accident when the facts show that it would have been impossible within a few hours for the appellee to have known whether he was totally disabled or not.

O. H. Wilcox was the executive secretary of the Employee's Mutual Benefit Association, which was an organization of the employees of the West Kentucky Coal Company. The association handled the insurance carried by the coal company; Wilcox kept the records, ordered the insurance, and cancelled same, if necessary. He also checked the pay roll of employees of the company and kept a list of the employees of the coal company. The appellee states in his evidence that he reported the accident to the coal company at once but we are unable to find any evidence where he reported to the coal company that he was totally disabled. The appellee stated that Dr. Wm. K. Nesbit sent him to the hospital. Dr. Nesbit was employed by the Employees' Mutual Benefit Association. He stated that he called on appellee in September or October, 1930, at his home, and that he was suffering from hemorrhoids. He treated him for about one month. During this time appellee was up and down. About November 1, 1930, Dr. Nesbit sent

appellee to a hospital at Evansville. Dr. Wm. R. Davidson operated on appellee for internal hemorrhoids on or about November 9, 1930, and released him from the hospital five or seven days later. Dr. Davidson said he was not permanently disabled when he left the hospital and that he should have been able to go back to his work at his former employment in a week or so. When the appellee returned from the hospital to his home, Dr. Nesbit had charge of him. He saw him the rest of November, 1930, and discharged him the last of November. Dr. Nesbit said he was then cured and ready to go to work and told him so, but that he just laid around.

If it should be conceded that either the coal company, Wilcox, Dr. Nesbit, or Dr. Davidson was the agent of the appellant, we fail to find any evidence in the record where it can be said that the appellee reported to either of them his claim of total disability caused by the alleged accident. We have carefully read and scrutinized all the evidence in the record and fail to find any report to the appellant or to any purported agent of appellant by the appellee to the effect that he was permanently and totally disabled by reason of the alleged accident, except the formal report sent to appellant on December 4, 1933.

Finding this to be a true state of the record, we are confronted with the proposition—Did the appellee present proof of his alleged total and permanent disability within a reasonable time?

It is generally held that where no time limit is fixed in a policy of insurance within which proof of disability should be furnished, then said proof must be submitted within a reasonable time from the date of the commencement of the disability. In the case of *Metropolitan Life Ins. Co.* v. *Frankel* (1915), 58 Ind. App. 115, 122, 103 N. E. 501, it is said:

"It is the settled law that where the policy contains no specific time within which the notice must be given, . . . such notice must be given within a reasonable time. . . . As to what is a reasonable time depends upon the circumstances in each particular case. If, however, there is a delay of considerable time unexplained, and the facts are undisputed, it becomes a question of law for the court whether notice was given within a reasonable time."

To the same effect is the case of *Metropolitan Life Ins. Co.* v. *People's Trust Co.* (1912), 177 Ind. 578, 98 N. E. 513. This rule of law is generally announced in decisions and text books. In the case of *Prudential Ins. Co. of America* v. *Falls* (1935), 169 Tenn. 324, 87 S. W. 567, the court was dealing with an insurance policy which fixed no time within which proof of disability should be furnished. The court said (p. 327) :

"In the absence of a period of limitation fixed in the contract, it was the duty of Falls to furnish proof of his alleged total permanent disability within a reasonable time after the beginning thereof. (Citing cases.) When Falls undertook, after the lapse of a reasonable time, to furnish proof of loss, he had no insurance with the defendant company. The contract of insurance had ceased to exist."

In the case of *Milam* v. *Equitable Life Assurance Society of the United States* (1936), 117 W. Va. 77, 183 S. E. 865, the court said (p. 79) :

"The rule is announced by the courts generally. that notice of a claim on an insurance policy must be given within a reasonable time as the claim arises. *Warner* v. *Modern Woodmen of America,* 124 Wash. 252, 214 P. 161, 34 A. L. R. 87; *Metropolitan Life Ins. Co.* v. *Frankel,* 58 Ind. App. 115, 103 N. E. 501. 'In the absence of any provision in the policy relating to the time for presenting to the company the proofs of loss, the law requires that such proof must be made within a reasonable time.' 14 R. C. L. 1328. The insurer, being wholly dependent upon the insured for information relative to the time liability to pay occurs, has included

in its contract the requirement that the assured notify it of the happening of such event. And, as stated in *Spratley* v. *Mutual Benefit Life Ins. Co.*, 11 Bush (Ky.) 443. 'The presumption is conclusive that the parties to the contract intend that this notice shall be given as soon as it is reasonably possible to do so.' This Court, in discussing the matter of stale claims, in the case of *Iannarelli* v. *Kansas City Life Ins. Co.*, 114 W. Va. 88, 171 S. E. 748, 750, makes the following pertinent statement: 'Life insurance has come to occupy a most important field and to discharge an indispensable function in modern society. The life insurance companies are enabled to function only on the basis of standard mortality and experience tables. These companies must comply with fixed requirements of state statutes. Neither the actuaries of the companies nor the insurance commissioners of the states could determine with any degree of definiteness the liability to which the companies might be subjected at any given date on account of outstanding insurance, if at the same time there are a large number of policies, supposedly lapsed and forfeited, under which there may be liability because of total disability of the insured at the time of the forfeiture, though the insurer had no notice of such disability.' "

In the case of *Conn. General Life Ins. Co.* v. *Kornegay* (1936), (Tex. Civ. App.), 93 S. W. (2d) 164, 167, it is said:

"In the absence of a stipulated meaning in the policy, the words 'furnish' and 'due' and 'proof' are given their ordinary meaning in determining whether 'due proof' of loss has been made in compliance with the requirements of the policy. 'Due,' in the expression 'due proof,' ordinarily refers to the time when the proof is to be made rather than the sufficiency of facts to be established by the proof. When 'due proof' of loss is required by the policy and no period of time is specified within which proof shall be made, the law requires that same shall be made within a reasonable time after the happening of the loss. The question, then, is: What will be considered as a 'reasonable time'? We think that ordinarily it may be said to mean as

early after the occurrence of the loss as is consistent with the attending circumstances. It is the experience of every defender of causes that it is a matter of first importance to become possessed of all the material facts and the names and residences of all known witnesses at the earliest possible time, as facts may be forgotten or distorted, and witnesses may go beyond reach. Requiring the making of due proof is an important provision, in that it is for the protection of the insurer against fraudulent claims, and also against those which, although made in good faith, are not valid. In the instant case, the proof of loss was not made until more than four years after same occurred. There was neither pleading nor proof excusing the long delay in the making of proof of loss. That proof of loss furnished after the expiration of a reasonable time does not comply with the requirement of 'due proof of loss' is well settled." Cases cited.

As we have heretofore stated, the evidence does not disclose that there was any proof of total permanent disability given to appellant until December 4, 1933, more than three years after appellee's total permanent disability occurred as alleged. There is no proof, as we view it, or reason for the long delay in presenting proof of total permanent disability. We think the delay was unreasonable, did not meet the requirement of the insurance policy, and, as a matter of law prevents the appellee from recovering. We recognize the rule as to what is a reasonable time depends upon the circumstances in each particular case, but when, as here, there has been a delay for more than three years unexplained and, as we think, the facts practically undisputed, it then becomes a question of law for the court whether notice was given within a reasonable time.

In view of the conclusion we have reached it is not necessary for us to consider other questions presented in the case.

Judgment reversed.